UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel., <br><br> Plaintiff, <br><br> v. <br><br> YAKIMA PRODUCTS INC, <br><br> Defendant. | CASE NO. C21-0524-KKE <br><br> ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO SEAL |

This matter comes before the Court on Defendant Yakima Products Inc.'s ("Yakima") motion to keep sealed parts of the amended complaint. Dkt. No. 22. The Relator, Brent Stone, objects to keeping parts of the record sealed (Dkt. No. 32), and the United States takes no position on the motion (Dkt. No. 23 ¶ 8). For the reasons explained below, the Court grants in part and denies in part the motion to seal.

## I.  BACKGROUND

This is a qui tam action brought by Relator Stone alleging Yakima, his prior employer, defrauded the United States by knowingly failing to pay certain import duties and falsely identifying the country of origin of certain products. *See generally* Dkt. No. 9.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO SEAL - 1

Relator Stone filed this action in April 2021.  Dkt. No. 1.  In accordance with 31 U.S.C. § 3730(b)(2), the complaint was served on the United States and maintained under seal.  Relator Stone filed an amended complaint on June 9, 2022.  Dkt. No. 9.  While continuing its own investigation, the United States submitted multiple requests to extend the deadline to decide whether to intervene in the action, and requesting the matter remain under seal pending that decision.  *See* Dkt. Nos. 5, 7, 10, 12, 16.  The Court granted each extension for good cause and the case remained under seal.[1]  *See* Dkt. Nos. 6, 8, 11, 13, 17.  On October 18, 2023, the United States filed its notice of intervention-in-part and declination-in-part.  Dkt. No. 19.  The United States explained it was intervening for only certain "Covered Conduct";[2] the parties planned to file a Joint Stipulation of Dismissal after Yakima paid its initial settlement payment; and the United States reserved the right to file a complaint in intervention should Yakima fail to pay.  Dkt. No. 19 at 2.  The United States also requested that the Court lift the seal on the case but noted Yakima's potential forthcoming objection to lifting the seal.  *Id.*  The Court ordered the Parties to submit any motion(s) to seal by October 27, 2023.  Dkt. No. 20.

Consistent with the Court's order, on October 27, 2023, Yakima moved to keep paragraphs 3.11, 3.18–3.26, 3.28, 3.29 in the amended complaint permanently under seal on the grounds that they allegedly contain attorney-client privileged communications.[3]  Dkt. No. 22.  In support of its motion to seal, Yakima filed an unopposed motion to submit the declaration of George Tuttle for in camera review.  Dkt. No. 24.  The Court granted the motion and ordered Yakima "to provide

---

[1] The Court granted the Government's request to provide "a copy of the Complaint and any other amended complaints that may be filed in the future" to Yakima.  Dkt. No. 15.

[2] "Covered Conduct" is defined in the settlement agreement between the Parties, which was not provided to the Court.  Dkt. No. 19 at 2.

[3] Yakima states it has not reviewed other filings because they remain under seal so its request to seal also applies to other documents that reflect the same attorney-client communications.  *See* Dkt. No. 22 at 1 n.1.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO SEAL - 2

copies of the redacted Tuttle declaration to all counsel of record and the Court." Dkt. No. 29.[4] Relator Stone objects to maintaining the identified paragraphs of the amended complaint under seal because they either do not reflect legal advice, the privilege was waived, or the crime-fraud exception applies. Dkt. No. 32. Yakima filed a reply addressing each of Relator Stone's arguments. Dkt. No. 35. The motion to maintain the subject paragraphs under seal is now ripe for consideration.

## II.   ANALYSIS

### A.   Legal Standard for Motions to Seal

Courts recognize that "[t]here is a strong presumption of public access to the court's files[,]" and the moving party bears the burden of overcoming this presumption. Local Rules W.D. Wash. LCR 5(g); *see also Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). When determining whether to seal a document, the Court applies either a "compelling reasons" or "good cause" standard, depending on the type of document at issue. *See Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 677–78 (9th Cir. 2010) (describing the two standards). Courts in this Circuit apply the "compelling reasons" standard when determining whether to seal parts of a complaint. *See In re Qualcomm Litig.*, No. 3:17-CV-00108-GPC-MDD, 2019 WL 845659, at *1 (S.D. Cal. Feb. 21, 2019) (collecting cases).

Yakima's sole argument to support its motion to seal is that the identified allegations include attorney-client privileged information. Attorney-client privileged information satisfies the "compelling reasons" standard. *Hanson v. Wells Fargo Home Mortg., Inc.*, No. C13-0939JLR, 2013 WL 5674997, at *3 (W.D. Wash. Oct. 17, 2013) (collecting cases). Thus, if Yakima demonstrates the specific allegations in the amended complaint are attorney-client privileged, the

---

[4] Yakima did not submit a copy of the redacted Tuttle declaration to the Court.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO SEAL - 3

Court will grant the motion to seal. The reverse is also true: the Court will deny the motion to seal if the information is not attorney-client privileged.

### B. Some Allegations in the Amended Complaint Contain Attorney-Client Privileged Communications.

The Ninth Circuit has set forth the elements of the attorney-client privilege: (1) where "legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived." *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011). "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) (quoting *United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002)). Communications between nonlegal employees can be attorney-client privileged where: (1) "the employees discuss or transmit legal advice given by counsel"; or (2) "an employee discusses her intent to seek legal advice about a particular issue." *United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1077 (N.D. Cal. 2002). "'The privilege only protects disclosure of [the] communications [themselves]; it does not protect disclosure of the underlying facts,' so long as the underlying facts can be proven without resort to the privileged materials." *Murdoch v. Castro*, 609 F.3d 983, 995 (9th Cir. 2010) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981)).

With these principles in mind, the Court turns to the paragraphs of the amended complaint (Dkt. No. 9) Yakima asserts contain attorney-client privileged information.

Paragraph 3.11 alleges the existence of import duties and that such duties applied to Yakima. Even if these facts came from work performed by Mr. Tuttle, the paragraphs reflect

underlying facts that Yakima could establish without relying on privileged materials and are not attorney-client privileged.

Paragraph 3.18 describes the approximate timing and content of legal advice provided by Mr. Tuttle and is privileged.

Paragraph 3.19 alleges the amount of unpaid tariffs. This same allegation is present in Paragraph 1, which Yakima does not seek to seal. Accordingly, Paragraph 3.19 is not privileged.

Paragraph 3.20 contains information that reflects legal advice from Mr. Tuttle concerning the payment of tariffs. The parties agree that the information is privileged (Dkt. No. 22 at 9, Dkt. No. 32 at 11 ("It then directed Tuttle to share the advice …")), but as detailed below, disagree as to whether the privilege has been waived.

Paragraphs 3.21, 3.22, and 3.26 describe discussions among nonlegal employees of Yakima, outside the presence of any counsel. These conversations are only attorney-client privileged if the employees were discussing or transmitting legal advice given by counsel or an intent to seek legal advice. *ChevronTexaco*, 241 F. Supp. 2d at 1077. Each of these paragraphs describes reports or discussions between CEO Ryan Martin and company owners, Relator Stone, and/or CFO Sandi Lennehan about what should be included in disclosures to United States Customs and Border Protection. Mr. Tuttle was hired by Yakima to advise on this subject matter. Dkt. No. 36 ¶ 1 ("The purpose of my engagement was to assist Yakima's compliance with United States customs laws and regulations concerning the tariff classification and payment of customs duties, following an inquiry by U.S. Customs and Border Protection ('CBP') about the potential misclassifications of certain products imported by Yakima."). Accordingly, the Court finds that these paragraphs describe the transmission of legal advice and are privileged.

Paragraphs 3.23 and 3.24 describe Relator Stone's internal emotions and observations. Paragraph 3.23 includes an allegation indicating at some point Relator Stone spoke with Mr. Tuttle,

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO SEAL - 5

but the mere fact that a conversation occurred is not attorney-client privileged. Similarly, paragraph 3.24 includes a statement that Relator Stone made to Mr. Tuttle and CEO Martin stating he wanted "out of the middle" of the situation. This statement was not seeking legal advice and is not attorney-client privileged.

Paragraph 3.25 alleges the point at which certain documents were labeled "attorney-client privileged." The timing of when communications are labeled "attorney-client privileged" is not privileged. *See generally MKB Constructors v. Am. Zurich Ins. Co.*, No. C13-0611JLR, 2014 WL 2526901, at *10 (W.D. Wash. May 27, 2014) (explaining that sufficient privilege logs list "the date the document was generated, prepared, or dated," thus revealing when documents are labeled as privileged).

In its proposed redaction of the amended complaint, Yakima redacts paragraph 3.27. Dkt. No. 25 at 7. However, Yakima does not identify in its motion, reply, or either Tuttle declaration any basis to seal this paragraph. Yakima has not met its burden to show this paragraph is privileged.

Paragraph 3.28 states Relator Stone's conclusions about the appropriateness and legality of Yakima's actions and disclosures. This is an allegation that does not identify whose advice, if any, led Relator Stone to this conclusion. This paragraph does not reflect any privileged communications.

Yakima requests paragraph 3.29 remain sealed (Dkt. No. 25 at 7–8) but does not include it in its table identifying the specific bases for Yakima's privilege claims. *See* Dkt. No. 22 at 7–8. As detailed below, the record suggests that information in this paragraph was contained in a privileged document obtained by Relator Stone. This paragraph also explicitly describes actions allegedly taken by Mr. Tuttle ("Mr. Tuttle finalized …"), and as such, the Court finds this paragraph reflects attorney-client privileged information.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO SEAL - 6

In summary, Yakima has shown the following paragraphs include attorney-client privileged information: 3.18, 3.20, 3.21, 3.22, 3.26, and 3.29.

C.    **The Privilege Was Not Waived.**

Relator Stone argues that to the extent any privilege applies to paragraphs 3.18, 3.20, 3.21, and 3.22, it has been waived by Yakima's disclosures of the same information to Yakima's accountant, Moss Adams. Dkt. No. 32 at 3–4. To support his argument, Relator Stone attached to his motion a February 12, 2019 letter from Mr. Tuttle addressed to Moss Adams discussing the tariff payment issue. Dkt. No. 33 at 4–6. Though the original document was apparently obtained by Relator Stone from Yakima in Word format, undated and unsigned, counsel for Relator Stone converted the document to PDF and inserted the February 12, 2019 date, based on Relator Stone's representations. Dkt. No. 33 at 2. Relator Stone then argued that the letter was a final document that had been sent to Moss Adams, resulting in the waiver of privilege over the information contained therein.[5] Dkt. No. 32 at 3, 11. Yakima replied that this alleged disclosure never occurred and that the exhibit provided by Relator Stone was a non-final draft that was never sent to Moss Adams. Dkt. No. 35 at 8. Yakima attached a copy of the actual final letter to its reply. Dkt. No. 36 at 7–8. Because Relator Stone provides no reliable evidence of waiver, the Court declines to find Yakima waived the attorney-client privilege over any of the information included in paragraphs 3.18, 3.20, 3.21, and 3.22.

D.    **The Crime-Fraud Exception Does Not Apply.**

Relator Stone argues that, even if paragraphs 3.21, 3.22, and 3.29 include privileged information, the crime-fraud exception applies such that none of these paragraphs should be sealed.

---

[5] Relator Stone did not provide a declaration in support of this assertion. Rather, his counsel averred only that Relator Stone provided him the undated Word version of the letter and told him what date to insert. Dkt. No. 33 at 1–2. Because Relator Stone offers no evidence from anyone with personal knowledge of the circumstances surrounding the draft or its alleged transmission, the Court declines to consider Relator Stone's Exhibit A. Fed. R. Civ. P. 56(c)(4).

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO SEAL - 7

Dkt. No. 32 at 11–12. "A party seeking to invoke the crime-fraud exception must establish 'reasonable cause to believe that the attorney's services were utilized in furtherance of the ongoing unlawful scheme.'" *Bloeser v. Durbin*, 12 F. App'x 487, 488–89 (9th Cir. 2001) (quoting *United States v. Chen*, 99 F.3d 1495, 1503 (9th Cir. 1996)). Relator Stone's sole evidence that the crime-fraud exception applies to this information is: "The prima facie showing, using unprivileged communications to the CPA and to Customs, exhibits A through C, indicates that Mr. Tuttle told the CPA that the duties were owed, then failed to disclose them to Customs while claiming that his client was making a full disclosure, and violating law and regulation [sic] in the process." Dkt. No. 32 at 7. As explained above, Relator Stone's Exhibit A (Dkt. No. 33 at 4–6) is a non-final, draft document that has not been authenticated by a witness with personal knowledge. There is thus no evidence before the Court that "Mr. Tuttle told the CPA that the duties were owed" as Relator Stone alleges. Without this evidence, all that remains before the Court are allegations in a complaint and two non-contradictory letters from Yakima to the government. Dkt. No. 33 at 8–28. Relator Stone presents no evidence to the Court of an unlawful scheme, let alone sufficient evidence to find reasonable cause that Mr. Tuttle's services were utilized in furtherance of said unlawful scheme. The crime-fraud exception does not apply.

### III. CONCLUSION

For all these reasons, the Court GRANTS IN PART AND DENIES IN PART Yakima's motion to seal. Dkt. No. 22.

Relator Stone is ORDERED to:

1. File a new copy of the amended complaint with these paragraphs redacted: 3.18, 3.20, 3.21, 3.22, 3.26, and 3.29; and

2. Provide a copy of the following documents filed in this action to counsel for Yakima: Dkt. Nos. 1, 1-1, 1-2, 1-3, 19, 32, 33.

Yakima is ORDERED to file a redacted copy of the Declaration of George Tuttle, per the Court's prior order (Dkt. No. 29).

Both Relator Stone and Yakima are ORDERED to submit a joint report identifying the portions (if any) of Docket Numbers 1, 1-1, 1-2, 1-3, 19, 32, and 33 that should remain permanently sealed based on the reasoning set forth in this Order. If the parties disagree on whether certain components of the identified documents should be sealed or not, such disagreement should be identified in the joint report with each side providing a brief explanation for its position. The joint report is due February 29, 2024.

The Clerk is instructed to unseal the case while maintaining these documents under seal: Dkt. Nos. 1, 1-1, 1-2, 1-3, 9, 19, 26, 32, and 33.

Dated this 30th day of January, 2024.

Kymberly K. Evanson
United States District Judge